IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

LYNDA P. JOHNSON                                              PLAINTIFF

           v.          Civil No. 04-4100

LAFAYETTE COUNTY
SCHOOL DISTRICT                                               DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. and the Arkansas Civil Rights Act (ACRA), Ark. Code Ann. § 16-123-101, et seq. Plaintiff alleges that defendant discriminated against her on the basis of her race, African-American, by failing to interview and hire her for the position of Superintendent of the Lafayette County School District.[1] This matter is before the Court for decision following a two-day trial to the Court beginning on May 4, 2005. The following will constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

---

[1]In her complaint, plaintiff also mentioned gender and age discrimination, retaliation, and the intentional infliction of emotional distress. Plaintiff also identified 42 U.S.C. § 1981 and 42 U.S.C. § 1983 as a basis for her claims. (Doc. 1 ¶ ¶ 1, 11-14.) In her pretrial disclosure sheet, plaintiff clarified that her only claims were for race and gender discrimination under Title VII and the ACRA. (Doc. 12 ¶ ¶ 3, 8(1).) Plaintiff's gender discrimination claim was dismissed at trial and thus, her only remaining claim is for race discrimination.

**Findings of Fact**

1. Plaintiff has a doctorate degree in education and during the 2002 - 2003 school year, she served as the Superintendent of the Gould School District, a relatively small district comprised of approximately 300 students. Prior to this, plaintiff worked in the Little Rock School District as a "teacher, counselor, specialist, [and] weekend principal." (Pl.'s Ex. 20.)

2. The Lafayette County School District was formed, effective July 1, 2003, by the consolidation of two separate school districts in Lafayette County, Lewisville and Stamps. The two school districts had been great rivals in the past and there was some resistance, at least initially, to the consolidation.

3. During the consolidation process, the school boards ran advertisements for the position of superintendent, seeking applicants with experience and a background in finance and curriculum. (Pl.'s Ex. 14.) Russell Wright, president of the newly formed Lafayette County School Board (the "Board") contacted representatives of the Arkansas Department of Education and the Arkansas Association of Educational Administrators for recommendations. Representatives of both entities recommended Winston Simpson. Simpson had approximately twenty years experience

as a superintendent of three different school districts and was employed at the time as the "Arkansas P-16 Partnership Coordinator" at the Arkansas Department of Higher Education. (Pl.'s Ex. 21.) Wright contacted Simpson, but Simpson was not interested in the position initially because he did not want to relocate.

4. On July 7, 2003, the Board met to review the twenty-one applications they had received for the superintendent's position. Including plaintiff, four of the applicants were African-American. Each Board member was to submit up to three applicants' names to the Board and the Board would then vote on whom to interview. Only one Board member, Bonnie Daniels, one of two African-American members of the Board, had plaintiff's name on her list of applicants to interview. Lateta Briggs, the other African-American Board member, did not have plaintiff on her list and testified that plaintiff's resume did not stand out to her.

5. The Board members were all in agreement that they needed a superintendent with significant experience to bring the two school districts together and deal with all of the potential problems of such a merger. Almost every Board member chose Thomas Gathen, another African-American applicant, for an interview. Gathen had approximately sixteen years experience as a school superintendent and

principal. The Board subsequently decided not to interview Gathen, however, because they learned that he had received a citation for driving while intoxicated in a school vehicle.

6. The Board decided to conduct a telephone interview of Pete Vanzant, a white applicant who lived out of state and had approximately ten years experience as a superintendent, but the Board did not feel that the interview went well.

7. The Board was dissatisfied with the experience and qualifications of the remaining applicants, with the exception of one, Sammy Bray. Bray had been hired to serve as the middle school principal of the Lafayette County School District for the upcoming year and had approximately four years experience as a superintendent and five years experience as a principal. Some of the Board members were not entirely in favor of Bray because they had heard he had had an affair with a teacher. However, the Board nevertheless decided to interview Bray because he had the experience they were looking for and school was close to starting and they needed a superintendent in place. Additionally, Richard Hampton, who served as the former superintendent of the Stamps School District and the interim superintendent during the consolidation process, highly recommended Bray.

8. The Board interviewed Bray and President Wright informed Bray that the Board intended to vote to hire him for the superintendent's position at their next meeting. Prior to the Board's scheduled meeting, however, Simpson had a change of heart, decided that he was in fact interested in the position, and faxed his resume to Wright on July 18, 2003. The Board interviewed Simpson and was extremely impressed with his qualifications and experience and with how he responded to their questions and concerns about the consolidation process. At the next Board meeting on July 21, 2003, the Board voted unanimously to hire Simpson.

9. During the consolidation process, the Board received three letters from the National Association for the Advancement of Colored People (the "NAACP") expressing concerns about the Board's failure to hire "minority teachers and administrators to meet the State required ratios." (Pl.'s Ex. 35.) A representative of the NAACP also attended the July 21, 2003 Board meeting and submitted a written list of questions regarding the application and interview process for the superintendent's position and whether the school district had a minority hiring plan. (Pl.'s Exs. 34 - 37.)

10. The Board never responded to the NAACP's letters but it did in fact have a "Minority Recruitment Plan" in place. The plan reflected that the student body of the consolidated

school district consisted of 59% minorities, while only 18% of the teachers and administrators were minorities. The plan provided:

<u>Analysis and Summary of Data:</u>

> Over the past five years, the racial composition of the school districts has increased slightly.
>
> Minorities have been hired when qualified applicants are available. The percentage of minority students in the school district is greater than the racial composition among residents.

<u>Short-Term Goals:</u>

> ... Employ an appropriate number of teachers [and administrators] which is within a plus or minus ten (10) percent of the racial composition of the student body....

<u>Long-Term Goals:</u>

> A. Conduct activities that will increase and enhance the chances of minority students and adults residing in the district to pursue a career in the field of education.
>
> B. Include recruitment of minority teachers and administrators as an issue in strategic planning for the newly formed district.

<u>Identify improvements that are needed:</u>

> A. During the 2003-2004 school year, the district will take the following measures to improve coordination of recruitment efforts[:]
>
> > 1. Maintain a minority recruitment coordinator[.]
> >
> > 2. Establish contact with persons and org[a]nizations who can assist such as

cooperatives, colleges, minority churches, etc.

3. Identify other means to improve recruitment efforts. (Pl.'s Ex. 1(A).)

**<u>Conclusions of Law</u>**

1. Title VII and the ACRA prohibit an employer from refusing to hire an individual because of such individual's race. <u>See</u> 42 U.S.C. § 2000e-2(a)(1) and Ark. Code Ann. § 16-123-107(a)(1). Claims premised under Title VII and the ACRA are analyzed in the same manner. *See Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n. 3 (8th Cir. 2000).

2. Because this case was fully tried on the merits, the Court does not address the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and proceeds directly to the ultimate question of whether plaintiff was the victim of intentional discrimination. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 713-14 (1983); *Bowen v. Celotex Corp.*, 292 F.3d 565, 566 (8th Cir. 2002). The Court does not believe this to be the case.

3. The evidence in this case clearly demonstrates that the primary qualification the Board was looking for was experience. While plaintiff had one year experience as a superintendent, Simpson had approximately twenty years

cooperatives, colleges, minority churches, etc.

3. Identify other means to improve recruitment efforts. (Pl.'s Ex. 1(A).)

**<u>Conclusions of Law</u>**

1. Title VII and the ACRA prohibit an employer from refusing to hire an individual because of such individual's race. <u>See</u> 42 U.S.C. § 2000e-2(a)(1) and Ark. Code Ann. § 16-123-107(a)(1). Claims premised under Title VII and the ACRA are analyzed in the same manner. *See Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n. 3 (8th Cir. 2000).

2. Because this case was fully tried on the merits, the Court does not address the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and proceeds directly to the ultimate question of whether plaintiff was the victim of intentional discrimination. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 713-14 (1983); *Bowen v. Celotex Corp.*, 292 F.3d 565, 566 (8th Cir. 2002). The Court does not believe this to be the case.

3. The evidence in this case clearly demonstrates that the primary qualification the Board was looking for was experience. While plaintiff had one year experience as a superintendent, Simpson had approximately twenty years

experience.  Indeed, at trial, plaintiff herself acknowledged that Simpson was well-qualified for the position and stated that she would not have brought this lawsuit if she had at least been interviewed for the position.  While the failure to interview a qualified minority applicant could be evidence of discrimination, the Court finds that the Board chose not to interview plaintiff because she did not have enough experience.

Only one Board member had plaintiff on her list of applicants to interview.  Almost every Board member had Thomas Gathen, an African-American applicant with significant experience, on their list to interview.  The Board decided not interview Gathen, however, when they learned about the driving-while-intoxicated incident.  The second individual the Board decided to interview, Pete Vanzant, had approximately ten years experience as a superintendent.  The third individual the Board decided to interview, Sammy Bray, had a combined eight years experience as a superintendent and principal.  Unlike the situation with Gathen, the Board went ahead with Bray's interview even though they had heard he had an affair with a teacher.  The Court does not find this to be evidence of discrimination, however, as Gathen's indiscretion was criminal and Bray's was not.  The above evidence

demonstrates that the Board did not act with any discriminatory intent in choosing applicants to interview but simply chose to interview applicants with more experience than plaintiff.

4. At trial, plaintiff made much of the fact that the NAACP had concerns about the Board's hiring practices. Such concerns, however, do not constitute proof that the Board's practices were unfair or illegal. While the school district's student versus teacher/administrator minority ratio was disparate, plaintiff presented no convincing evidence that qualified minority applicants applied for positions and were not hired. Further, while the school district did not respond to the NAACP's letters or the written list of questions submitted at the July 21, 2003 Board meeting, the district did have a "Minority Recruitment Plan" in place which addressed the NAACP's concerns.

5. Plaintiff also pointed out that Bray was led to believe that he had the superintendent's position. According to plaintiff, [T]he School Board, apparently fearful of a charge of discrimination, approached Mr. Winston Simpson, who had not formerly applied, and offered Mr. Simpson the job of Superintendent, after the period established by the

School Board for applying had expired." (Doc. 12 ¶ 7.) This contention is not supported by the evidence.

Simpson was recommended to the Board President, Russell Wright, early on in the process but Simpson was not interested in the position at that time. Simpson had a change of heart at the eleventh hour and applied for the position. The advertisements for the superintendent's position contained no application deadline. Further, even if Simpson's application was submitted at a late date, it was certainly reasonable for the Board to consider it, especially in light of the fact that his qualifications and experience far exceeded any of the other applicants. All Board members, including the two African-American members, were extremely impressed with Simpson and they voted unanimously to hire him. In the Court's view, the evidence clearly demonstrates that the Board's decision to hire Simpson instead of plaintiff, or any of the other applicants, was based on his qualifications and experience and that race played no part in the decision.

## Conclusion

Based on the foregoing, the Court concludes that plaintiff's claims have not been proven. Accordingly, a separate judgment will be entered in favor of defendant and plaintiff's claims will be dismissed with prejudice.

IT IS SO ORDERED this 4th day of November 2005.

                                        <u>/S/JIMM LARRY HENDREN</u>
                                        JIMM LARRY HENDREN
                                        UNITED STATES DISTRICT JUDGE